

FILED
Jul 06, 2021
09:53 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Tonya Lynn Stephens | ) Docket No. 2018-03-1494 |
| | ) |
| v. | ) State File No. 59534-2016 |
| | ) |
| Quality Private Care d/b/a | ) |
| Volunteer Staffing, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard June 24, 2021 |
| Compensation Claims | ) via Microsoft Teams |
| Lisa A. Lowe, Judge | ) |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer declined to authorize certain medical treatment prescribed by an authorized treating physician based on the opinion of another physician that the recommended treatment was contraindicated due to a diagnosed psychological condition and was not medically necessary under the circumstances. In response to an "emergency motion to halt unsafe, contraindicated procedure or, in the alternative, to hold employer harmless for bad outcome," the trial court concluded the testimony and opinions offered by the treating physicians outweighed those of the employer's expert, and it ordered the employer to authorize the treatment. The employer has appealed. We affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Pele I. Godkin joined.

Nicholas J. Peterson and Amy Brown, Knoxville, Tennessee, for the employer-appellant, Quality Private Care d/b/a Volunteer Staffing, Inc.

Jay E. Kohlbusch, Knoxville, Tennessee, for the employee-appellee, Tonya Lynn Stephens

### Factual and Procedural Background

Tonya Lynn Stephens ("Employee") worked as a home health nurse for Quality Private Care d/b/a Volunteer Staffing, Inc. ("Employer"). On August 5, 2016, Employee was lifting a patient when she felt pain and a pop in her left shoulder. She also

1

complained of neck pain, low back pain, and hip pain. Employer initiated benefits and authorized medical treatment, and Employee came under the care of an orthopedic surgeon, Dr. William Hovis, who performed two shoulder surgeries. After the second shoulder surgery, Dr. Hovis referred Employee to Dr. Sean Grace, a shoulder specialist, for an evaluation. Dr. Grace diagnosed complex regional pain syndrome ("CRPS") and recommended a referral to another physician. Employee then selected Dr. David Newman from an employer-provided panel, who provided pain management treatment. Dr. Newman recommended several courses of treatment, including a spinal cord stimulator trial. Employer submitted Dr. Newman's treatment recommendations to its utilization review ("UR") provider, and the reviewing physician recommended that the spinal cord stimulator trial be denied. However, when this recommended treatment was submitted for utilization review a second time, the UR physician agreed the spinal cord stimulator trial was medically necessary.[1]

Before Employee was able to proceed with the spinal cord stimulator trial, Dr. Newman retired, and treatment was delayed while Employer provided another panel of physicians. The next panel-selected physician, Dr. James Choo, first saw Employee on July 15, 2020. He agreed Employee suffered from CRPS and was a candidate for a spinal cord stimulator trial, but he noted certain prerequisites to proceeding. Specifically, Employee's A1C test, which measures blood sugar, needed to be under a certain level due to her diabetes, and she needed a psychological evaluation to assess the appropriateness of the spinal cord stimulator trial. Thereafter, Employee underwent a psychological evaluation with Dr. Ted Jones, who diagnosed her with somatic symptom disorder, severe depression and anxiety, and "significant catastrophizing." Nevertheless, Dr. Jones concluded Employee was a "good candidate" for the spinal cord stimulator trial despite these diagnoses.

Employer requested Dr. Jeffrey Hazlewood, a physical medicine and rehabilitation specialist, to review medical records and offer opinions on diagnoses and treatment recommendations, including the appropriateness of the spinal cord stimulator trial. After reviewing numerous records, Dr. Hazlewood commented that "[t]here have been minimal objective signs of CRPS documented, and basically this diagnosis was based on apparently subjective symptoms with lack of explanation otherwise of her current symptomatology." As a result, Dr. Hazlewood concluded he could not state "within a reasonable degree of medical certainty that this claimant has a diagnosis of [CRPS]." He further concluded, "[i]t is not appropriate to refer to a spinal cord stimulator placement, in

---

[1] In an expedited hearing order issued May 24, 2019, in which the trial court ordered Employer to authorize compounded creams as prescribed by Dr. Newman, the trial court noted that Dr. Newman had recommended several courses of treatment, including a spinal cord stimulator, and that Employer had "agreed to authorize all of the treatments except the compound[ed] creams." Thus, contrary to the assertion in Employer's "Emergency Motion to Halt Unsafe, Contraindicated Procedure," which sought to "rescind prior order authorizing a spinal stimulator surgical implant," the record contains no such order. Instead, the record indicates Employer had previously agreed to authorize the spinal cord stimulator trial.

my opinion, when there is no clear cut anatomical diagnosis, and certainly not enough objective findings ... to justify a spinal cord stimulator." Finally, Dr. Hazelwood commented that it is not appropriate under the Official Disability Guidelines ("ODG") for a psychological evaluator to have a financial relationship with the physician who prescribed the spinal cord stimulator trial and, based on his review of the records, such a relationship existed between Dr. Choo and Dr. Jones.

In response to Dr. Hazlewood's report, Employee's attorney requested supplemental opinions from Dr. Choo and Dr. Jones. In a November 16, 2020 letter to Employee's attorney, Dr. Jones disagreed with certain of Dr. Hazlewood's statements and, in particular, noted that "[n]ot all patients who have [somatic symptom] disorder should be ruled out from a stimulator treatment." After noting he had evaluated "hundreds of patients for spinal cord stimulators," he expressly disagreed with Dr. Hazlewood's conclusions and suggested Dr. Hazlewood not "practic[e] psychology without a license." Finally, he rejected Dr. Hazlewood's statements concerning his relationship with Dr. Choo and explained that he is an "independent psychologist" whose practice merely rents space from Dr. Choo's practice.

Similarly, in a November 16, 2020 letter to Employee's attorney, Dr. Choo also disagreed with Dr. Hazlewood's conclusions. He insisted that, during his clinical evaluations of Employee, he "performed a physical evaluation and observed her symptoms were consistent with the IASP criteria for CRPS."[2] He commented he had "never had an instance where an insurance carrier questioned the validity of a diagnosis I have made." He disagreed that the proposed treatment violated the ODG. He rejected Dr. Hazlewood's statement that there was a financial relationship between himself and Dr. Jones that precluded his referring patients to Dr. Jones for a psychological evaluation. He also rejected Employer's attorney's suggestion that either he or his practice receives any kind of financial remuneration from companies that sell neuromodulation devices. In sum, Dr. Choo insisted that "patients who pass this screening and are determined to be suitable candidates by the psychologist are permitted to proceed. Patients who do not pass the screening do not proceed."

Following a motion hearing, the trial court determined Employee had come forward with sufficient evidence to conclude she would likely prevail at trial in proving the reasonableness and medical necessity of a spinal cord stimulator trial that was causally related to her work injury. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise.

---

[2] IASP refers to the International Association for the Study of Pain.

*See* Tenn. Code Ann. § 50-6-239(c)(7) (2020). However, a trial court's findings based upon documentary evidence is reviewed do novo with no presumption of correctness. *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

## Analysis

On appeal, Employer asserts the trial court erred in several respects. First, Employer insists a trial court cannot order treatment that does not comply with the ODG. Second, Employer argues it cannot be held liable for the cost of treatment that does not comply with the ODG. Third, Employer insists the trial court abused its discretion in failing to consider the ODG when evaluating the medical necessity of the prescribed treatment. Fourth, Employer asserts the trial court erred in not holding it harmless from any adverse effects that could occur as a result of the spinal cord stimulator trial. For her part, Employee asserts Employer's appeal is frivolous and/or taken solely for delay, and she moves this court to award her "damages."

### *Medical Treatment Guidelines*

The issues raised by Employer require us to consider and interpret the statutes and regulations regarding the adoption of the medical treatment guidelines for workers' compensation claims. In 2013, the General Assembly authorized and instructed the Administrator of the Bureau of Workers' Compensation, in consultation with the medical advisory committee, to "adopt guidelines for the diagnosis and treatment of commonly occurring workers' compensation injuries" by January 1, 2016. Tenn. Code Ann. § 50-6-124(g) (2014). In discharging this obligation, the Administrator officially adopted the *Work Loss Data Institute ODG Guidelines*, effective January 1, 2016, and "any future published updates." Tenn. Comp. R. & Regs. 0800-02-25-.03(1) (rev. 2018).

Regulations pertaining to the ODG provide that medical treatment that is "in accordance with the [ODG] . . . is presumed to be reasonable and necessary." Tenn. Comp. R. & Regs. 0800-02-25-.03(2). Moreover, "[a]ny treatment that explicitly follows the treatment guidelines . . . or is reasonably derived therefrom, including allowances for specific adjustments to treatment, shall have a presumption of medical necessity for utilization review purposes." *Id.* This presumption "shall be rebuttable only by clear and

4

convincing evidence that the treatment erroneously applies the guidelines or that the treatment presents an unwarranted risk to the injured worker." *Id.*

In addition, Bureau regulations acknowledge that "each individual clinical situation and patient [are] unique" and that "[t]he guidelines are not a standard or a mandate." Tenn. Comp. R. & Regs. 0800-02-25-.03(3). Furthermore, "[e]xceptions to and the proper application of the guidelines require judgment." *Id.*

Finally, the regulations provide that an employer "shall not deny treatment based solely on the determination that the treatment falls outside of the guideline if such denial is not supported by documented evidence-based medicine." Tenn. Comp. R. & Regs. 0800-02-25-.03(4). Under such circumstances, "[t]he employer shall not be responsible for charges for medical treatment that is not in accord with the guidelines unless: (a) [i]t was provided in a medical emergency; (b) [i]t was authorized by the employer," or "[i]t was approved through the appeal process by the Bureau." Tenn. Comp. R. & Regs. 0800-02-25-.03(5).

*Authority of Trial Court to Order Medical Treatment*

Judges on the Tennessee Court of Workers' Compensation Claims have a statutory duty to "hear and determine claims for compensation." Tenn. Code Ann. § 50-6-238(a)(3) (2020). Judges are obligated to apply the Tennessee Rules of Evidence and the Tennessee Rules of Civil Procedure at all hearings "unless an alternative procedural or evidentiary rule has been adopted by the administrator." Tenn. Code Ann. § 50-6-239(c)(1). Judges have the authority to issue "an order for the payment of benefits under the workers' compensation law." Tenn. Code Ann. § 50-6-239(c)(2). They can also issue orders "concerning the provision of temporary disability or medical benefits" at an interlocutory stage of the case if the employee has presented sufficient evidence supporting a finding that the employee "would likely prevail at a hearing on the merits." Tenn. Code Ann. § 50-6-239(d)(1).

With respect to medical benefits, trial judges must also consider several evidentiary presumptions. For example, "[a]ny treatment recommended by a physician or chiropractor selected [from an employer-provided panel], or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee." Tenn. Code Ann. § 50-6-204(a)(3)(H). We previously discussed these presumptions in *Morgan v. Macy's*, No. 2016-08-0270, 2016 TN Wrk. Comp. App. Bd. LEXIS 39 (Tenn. Workers' Comp. App. Bd. Aug. 31, 2016), as follows:

> [W]hen relevant statutory provisions and the rules governing the medical treatment guidelines are read in conjunction, it is evident that a trial court can apply one of two potential presumptions to the issue of medical necessity in any given case. First, as codified in section 50-6-204(a)(3)(H),

5

treatment recommended by an authorized physician is presumed medically necessary. While this provision does not specify the quantum of evidence required to rebut the presumption, . . . Tennessee courts have long acknowledged the presumption and considered it rebuttable by a preponderance of the evidence.

. . . .

Second, in circumstances where an employee establishes by expert medical evidence that the recommended treatment "explicitly follows the treatment guidelines" or "is reasonably derived therefrom, including allowances for specific adjustments to treatment," then the burden shifts to the employer to rebut the presumption of medical necessity by clear and convincing evidence.

*Id.* at *17-18 (internal citations omitted). In seeking to rebut this second presumption as described above, an employer can seek to prove, by clear and convincing evidence, that the physician erroneously applied the guidelines or that the treatment presents an unwarranted risk to the injured worker. Tenn. Comp. R. & Regs. 0800-02-25-.03(2). In accordance with Tennessee Code Annotated section 50-6-238(a)(3), the trial court is to weigh the evidence and determine whether the employer has met this burden.

*Trial Court's Order for Medical Treatment*

Here, the trial court was presented with conflicting medical opinions regarding the reasonableness and medical necessity of the proposed spinal cord stimulator trial. Dr. Newman initially recommended the spinal cord stimulator trial, and this recommendation was reiterated by Dr. Choo, both of whom were panel-selected physicians. Moreover, Dr. Jones, an authorized referral, completed the psychological evaluation and concluded Employee was a suitable candidate for the spinal cord stimulator trial despite her psychological conditions. Dr. Hazlewood, who conducted a medical records review but did not evaluate the patient in person, recommended against the procedure and concluded it fell outside the ODG. Both Dr. Choo and Dr. Jones responded to Dr. Hazlewood's objections. As we have discussed previously, when all such evidence is by deposition or other documentation, a reviewing court is in as good a position as the trial court in assessing such evidence. *Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *16 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015). Here, we conclude the preponderance of the evidence supports the trial court's determinations regarding the expert medical proof.

Employer first argues, essentially, that a trial court does not have the authority to order an employer to authorize or pay for medical treatment that falls outside the ODG. Employer urges this court to conclude "as a matter of law that the guidelines must be

followed." It further argues that allowing a trial court to order such treatment creates a "wide open, widespread, anything goes system." Employer insists "it is an error of law *per se* to reject an explicit prohibition in the guidelines."

The fallacies in Employer's arguments begin with the title of the publication. The ODG are "guidelines." Tennessee's regulations acknowledge this fact, defining the term "treatment guideline" to mean "recommendations intended to optimize patient care that are informed by a systematic review of the evidence and an assessment of the benefit and harms of alternative care options." Tenn. Comp. R. & Regs. 0800-02-25-.02(10). In adopting the regulations governing treatment guidelines, the Administrator expressly rejected the notion that the guidelines are a "standard" or a "mandate." Tenn. Comp. R. & Regs. 0800-02-25-.03(3). Instead, "each individual clinical situation and patient [are] unique," and a proper application of the guidelines requires "judgment." *Id.* If Employer's argument were taken to its logical conclusion, the opinion of a physician regarding a course of treatment would, in fact, be unnecessary. Any practitioner could determine recommended treatment as set out in the ODG and follow it to the letter, without any consideration of the particular circumstances of that patient's case. We conclude that is not what was intended when the Bureau adopted medical treatment guidelines.

Furthermore, Employer's interpretation would render Tennessee Code Annotated section 50-6-204(a)(3)(H) meaningless because no presumption of medical necessity would be necessary if the authorized physician were required to follow the ODG without any consideration of the physician's independent judgment and the circumstances of that patient's case. We reject such a rigid interpretation of the regulations adopting the ODG and reiterate that treatment recommended by an authorized physician is presumed medically necessary, and it is an employer's burden to overcome this presumption with competent expert evidence that meets the applicable standard of proof. Thereafter, it is the trial court's function to weigh that expert proof and make findings as to which opinions are more persuasive in light of any applicable burdens of proof. That is what the trial court did in this case.

Employer next argues that "[a]ll medical experts agree and the trial court agree[s] the guidelines prohibit the spinal cord stimulator on a patient like [Employee] with somatic symptom disorder." Employer's use of the word "medical" in this context apparently seeks to exclude the opinions of Dr. Jones, who conducted the psychological evaluation that Dr. Choo determined was a prerequisite to the spinal cord stimulator trial. Dr. Jones, in fact, specifically disagreed with the statement that a spinal cord stimulator "should not be undertaken in any patient with a diagnosis of somatic symptom disorder." He explained, "there are varying degrees and severities of this disorder," and he stated, "[n]ot all patients who have this disorder should be ruled out from a stimulator treatment." Dr. Choo, in reiterating his treatment recommendation, noted that Dr. Jones "is considered one of the nation's leading psychological experts on pain-and-addiction

issues." Dr. Choo expressed "complete confidence in Dr. Jones's abilities as a clinical psychologist," and he noted that Dr. Jones "found the patient to be a suitable candidate for [s]pinal [c]ord [s]timulation."

Employer additionally asserts the trial court determined that the proposed treatment fell outside the ODG. We conclude this is a mischaracterization of the trial court's order. In evaluating the expert proof, the trial court noted that "[t]he treatment guidelines do not completely rule out [a spinal cord stimulator] for those with anxiety/depression; they merely urge that caution be used." The trial court then noted that Dr. Jones expressly considered the ODG's guidance regarding a patient with somatic symptom disorder but concluded that, despite any contraindications, Employee was a suitable candidate for the procedure. As we have noted previously, "[a] trial court is not in a position to independently assess an injured worker's symptoms . . . to determine whether recommended treatment falls within medical treatment guidelines." *Morgan*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *18 (citing *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015)). Thus, a trial court must necessarily evaluate, weigh, and rely on expert proof to support its determinations regarding the proper application of the ODG and the issue of medical necessity. The trial court did so in this case.

Employer next argues the trial court erred in failing to consider the purported financial relationship between Dr. Choo's practice and Dr. Jones's practice, and whether that relationship invalidated Dr. Jones's opinions due to a conflict of interest. The trial court expressly considered the evidence submitted by the parties regarding this issue and determined there was no conflict of interest, concluding "Dr. Jones and Dr. Choo clearly rebutted [Employer's] assumption that a conflict of interest exists." The preponderance of the evidence supports that determination.

Employer also argues it cannot be held responsible for charges related to treatment that falls outside the ODG unless one of the exceptions noted in Tenn. Comp. R. & Regs. 0800-02-25-.03(5) is satisfied. We agree. However, as noted above, the experts in this case *disagreed* as to whether this treatment fell outside the ODG. Even assuming the recommended treatment were found to be "not in accord" with the ODG, we conclude the second of the exceptions, which requires an employer to pay for treatment authorized by the employer, applies in the present case for two reasons. First, the record contains no prior order from the trial court compelling Employer to authorize the spinal cord stimulator. Instead, the trial court's May 24, 2019 order indicated Employer had *agreed* to authorize all treatment, including the spinal cord stimulator, except for the

compounded creams.[3]   Second, even if Employer had not previously authorized the spinal cord stimulator before reversing course, this exception does not require that an employer *voluntarily* authorize the treatment, only that it authorize the treatment, whether voluntarily or involuntarily.  Thus, we conclude this exception includes cases where a court of competent jurisdiction has ordered an employer to authorize treatment.

After weighing the expert medical proof and choosing to give greater weight to the opinions of the authorized physicians, the trial court denied Employer's motion to halt the spinal cord stimulator trial and, in effect, ordered Employer to authorize treatment Employer had previously authorized.  Thus, pursuant to the express terms of Tenn. Comp. R. & Regs. 0800-02-25-.03(5)(b), Employer is responsible for the charges related to that treatment. Consequently, we conclude the trial court did not err in ordering medical treatment as prescribed by the authorized treating physician.[4]

Finally, Employee asserts that Employer's appeal should be deemed frivolous and/or taken solely for delay.  After carefully considering this issue, we decline to find Employer's appeal to be frivolous or taken solely for delay and respectfully deny Employee's motion for "damages" in accordance with Tenn. Comp. R. & Regs. 0800-02-22-.09(4).

## Conclusion

For the foregoing reasons, we affirm the trial court's expedited hearing order and remand the case.  Costs on appeal are taxed to Employer.

---

[3] We offer no opinion regarding what circumstances, if any, would support an employer's decision to withdraw authorization for treatment previously authorized in light of Tenn. Comp. R. & Regs. 0800-02-25-.03(5)(b).

[4] Employer has cited no authority and we are unaware of any statute or case law indicating a trial court has the authority to prospectively hold an employer harmless for medical treatment that does not produce the desired result.  Hence, we conclude the trial court did not err in denying that part of Employer's motion.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Tonya Lynn Stephens | ) | Docket No. 2018-03-1494 |
| | ) | |
| v. | ) | State File No. 59534-2016 |
| | ) | |
| Quality Private Care d/b/a | ) | |
| Volunteer Staffing, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard June 24, 2021 |
| Compensation Claims | ) | via Microsoft Teams |
| Lisa A. Lowe, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of July, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Jay E. Kohlbusch<br>Darla Watson | | | | X | kohlbuschlaw@hotmail.com<br>darlawatson1224@gmail.com |
| Amy Brown<br>Beverly Uphoff | | | | X | amy.brown@petersonwhite.com<br>beverly.uphoff@petersonwhite.com |
| Lisa A. Lowe, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov